UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON L. KAUFMANN,

        Plaintiff,

v.                                                                                      Case No. 1:14-cv-1230
                                                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born in 1970. PageID.297. She completed high school, had additional training as a certified Michigan peer support specialist, and had past employment as a temporary laborer, substitute school bus driver, and mental health aide. PageID.156-157, 198, 302. Plaintiff alleged a disability onset date of March 1, 2010. PageID.297. She identified her disabling conditions as bipolar I disorder, chronic fatigue syndrome, fibromyalgia and complex migraines. PageID.301. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 24, 2013. PageID.143-157. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of

March 1, 2010, and that she meets the insured status requirements of the Act through June 30, 2016. PageID.145. At the second step, the ALJ found that plaintiff had severe impairments of obesity, fibromyalgia, trochanteric bursitis, status post dislocated shoulder, fatigue, chronic pain, asthma, obstructive sleep apnea (OSA), and status post hysterectomy and endometriosis. PageID.146. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.150.

> The ALJ decided at the fourth step that:
>
> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and carry up to twenty pounds less than frequently and ten pounds frequently. The claimant can stand and walk for two hours in an eight-hour day. The claimant can sit for up to six hours in an eight-hour day. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can less than frequently climb ramps and stairs or perform any stooping, kneeling, crouching, and crawling. The claimant does not have any limits on balancing. The claimant should avoid concentrated exposure to the extremes of heat, cold, and humidity as well as fumes, odors, dusts, gases, and poor ventilation. The claimant cannot bilaterally overhead reach.

PageID.151. The ALJ also found that plaintiff was capable of performing her past relevant work as a mental health aide, work which did not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.157. Accordingly, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2010 (the alleged onset date) through June 24, 2013 (the date of the decision). PageID.127.

### III. ANALYSIS

Plaintiff raised four issues (with sub-issues) on appeal.

**A.  The ALJ failed to follow the "slight abnormality standard" when she found that Ms. Kaufmann's affective disorders are not a "severe impairment."**

Plaintiff contends that the ALJ failed to include her affective disorders ("bipolar syndrome and depression") as severe impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff had a number of severe impairments. PageID.146. The ALJ's failure to include additional severe impairments at step two is legally irrelevant. Accordingly, plaintiff's claim of error will be denied.

**B.  The ALJ violated 20 C.F.R. §404.1513(a) by failing to consider Mark Hamilton, MA, LLP, an acceptable medical source.**

Plaintiff contends that Mark Hamilton, MA, LLP, should be treated as an acceptable medical source. The Court disagrees. The regulations define an "acceptable medical source" as

licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a). An "acceptable medical source" receives special deference. *See* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)"). A treating source who is not an "acceptable medical source" is deemed an "other source." *See* 20 C.F.R. § 404.1513(d) (" In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -- (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)[.]").

In the present case, Mr. Hamilton was a "limited licensed psychologist," not a "licensed psychologist." See 20 C.F.R. § 404.1513(a). In Michigan, an individual with a master's degree in psychology may obtain a "limited" psychology license. M.C.L. § 333.18223(b)(2) (authorizing such licenses). Normally, a limited licensed psychologist must be supervised. *Id*. In *Richardson v. Commissioner of Social Security*, No. 1:12-cv-776, 2013 WL 5211245 (W.D. Mich. Sept. 16, 2013), *affirmed* 570 Fed. Appx, 537 (6th Cir. 2014), this Court determined that a limited licensed psychologist is not an acceptable medical source under the regulations:

> Plaintiff contends that the ALJ gave little or no weight to a treating source, whom plaintiff refers to as "Dr. Maureen Fabiano, the treating psychologist," "Dr. Fabiano," "M.A. Fabiano," and "Dr[.] Maureen Fabiano." Plaintiff's Brief at pp. 3, 11–13. The record reflects that Ms. Fabiano is not a doctor, but rather holds a master's degree and is a limited licensed psychologist "MA/LLP" (AR 532).

\*   \*   \*

6

> The ALJ could properly discount Ms. Fabiano's opinions because she is not an acceptable medical source under 20 C.F.R. § 416.913(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). While Ms. Fabiano's opinions can be considered as evidence from an "other" medical source, they are not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 416.913(d) (1) (evidence from "other" medical sources includes information from nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). *See also*, *Gayheart*, 710 F.3d at 378 (psychological therapist is not an acceptable medical source under the regulations); *Shontos v. Barnhart*, 328 F.3d 418, 425–26 (8th Cir.2003) (nurse practitioner is not an acceptable medical source under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir.2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).
>
> Pursuant to Social Security Ruling (SSR) 06–3p, opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06–3p. The ALJ evaluated and then properly discounted Ms. Fabiano's opinions consistent with SSR 06–3p. Accordingly, plaintiff's claim of error should be denied.

*Richardson*, 2013 WL 5211245 at *7-8 (footnote omitted).

In affirming this decision, the Sixth Circuit rejected plaintiff's claim that the ALJ improperly evaluated the opinion of limited licensed psychologist Fabiano:

> Richardson next argues that the ALJ erred by discounting the medical opinions of examining psychologist Dr. J. Keith Ostien and case worker Maureen Fabiano, who both concluded that Richardson had significant work-related limitations in mental functioning. The ALJ reasonably gave little weight to the medical opinion of Ms. Fabiano *because she is not a physician* and her conclusion that Richardson had significant impairments conflicted with other substantial evidence in the record, including Richardson's 2008 mental health assessment, Fabiano's own treatment notes, and Dr. Pinaire's opinion. Likewise, the ALJ reasonably discounted Dr. Ostien's opinion because it was given after a single evaluation and his conclusions were based largely on Richardson's vague statements concerning his circumstances and condition.

*Richardson v. Commissioner of Social Security*, 570 Fed. Appx. 537, 538-39 (6th Cir. 2014) (emphasis added).

Finally, in *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx, 426 (6th Cir. 2014), a case in which the plaintiff took the opposite position as asserted in here (i.e., that an LLP who issued an unfavorable opinion was *not* an acceptable medical source), the court explained that in evaluating an opinion prepared by a limited licensed psychologist, the "acceptable medical source" is not the limited licensed psychologist, but rather the supervising licensed psychologist who co-signed the opinion:

> On April 29, 2008, Smith–Johnson submitted to a psychological evaluation by Mary P. Koopman, a licensed professional counselor and limited licensed psychologist, which was cosigned by P. Douglas Callan, Ph.D., a licensed psychologist.
>
> \*   \*   \*
>
> Although Smith-Johnson takes issue with the consideration of Koopman's report because she is not an "acceptable medical source," she makes no attempt to explain why a report that is co-signed by an acceptable medical source (a licensed psychologist) cannot be considered. Even assuming, however, that the report does not come from an acceptable medical source, the regulations plainly permit consideration of that report. Specifically, the objective findings in the report are properly considered because they are relied upon by Dr. Kriauciunas, a non-examining state agency consultant whose opinion should be given weight only "insofar as [it is] supported by evidence in the case record." SSR 96–6p; *see also* 20 C.F.R. § 404.1527(c)(3)-(4). Koopman's opinions also are properly considered under the regulations that require evaluation of every medical opinion "[r]egardless of its source," and that permit "other sources" to be used to determine severity. 20 C.F.R. §§ 404.1513(d), 404.1527(c).

*Smith-Johnson*, 579 Fed. Appx. at 427, 435. Accordingly, plaintiff's claim of error is denied.

      **C.**    **The ALJ's RFC determination and hypothetical are not supported by substantial evidence.**

      **1.**    **The ALJ committed legal error when he gave "limited weight" to the opinion of plaintiff's**

> **treating psychologist and therapist and failed to comply with § 404.1527 in determining plaintiff's RFC.**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because he erred in evaluating the opinions of Fred Boothby, NP and Mr. Hamilton. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). RFC is determined at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014).

For the reasons discussed, *supra*, neither NP Boothby nor Mr. Hamilton were acceptable medical sources. Rather, "nurse practitioners, therapists, and the like" are evaluated as "other" medical sources, sometimes referred to as "non-acceptable medical sources." *See Amato Noto v. Commissioner of Social Security*, -- Fed. Appx. --, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015). The ALJ addressed NP Boothby's opinions, one of which was co-signed by Mr. Hamilton,[1] as follows:

> I have read and considered the opinion of family nurse practitioner, Fred Boothby, FNP (Exhibits l5F and 31F). Mr. Boothby opined that the claimant is unable to meet most competitive standards to do unskilled or semiskilled work (Exhibit Bl5F/4 and 5). He further opined that the claimant had moderate restrictions in activities of daily living, and marked restrictions in maintaining social functioning and maintaining concentration, persistence, or pace (Exhibit 15F/5). I give this opinion little weight. First, as a nurse practitioner, Mr. Boothby's opinion is not from

---

[1] The co-signed opinion is a "Mental impairment questionnaire (RFC & Listings)" dated May 31, 2012, PageID.630-635, and the other opinion is a "Signed Statement of Fred Boothby" dated April 3, 2013, PageID.964-966.

9

> an acceptable medical source. Second, Mr. Boothby's opinion is inconsistent with his own treatment notes. He opined that when he sees the claimant, she is very distressed most of the time (Exhibit 3lF/l ). However, in the fall of 2012 he reported that the claimant had a bright affect (Exhibit B26F/6). Further, in February 2013, his treatment notes show that the claimant's mood appeared to be happy (Exhibit B26F/3). Mr. Boothby's opinion is inconsistent with other mental status examination [sic] of the claimant where the claimant was found to be cooperative with good insight, judgment, and impulse control (Exhibits B8F/3, 6, and 36, Bl lF/7, and B26F/3). Accordingly, I give this opinion little weight as it is inconsistent with the claimant's residual functional capacity.

PageID.155-156.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ evaluates the report of a medical source who is not a treating, acceptable medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). The opinion of a "non-acceptable medical source," such as a nurse practitioner or therapist, "is not entitled to any particular weight or deference -- the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Amato Noto*, -- Fed. Appx. --, 2015 WL 7253050 at *4. However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the ALJ provided a reasoned evaluation of the opinions prepared by NP Boothby and Mr. Hamilton. Accordingly, plaintiff's claim of error is denied.

> **2.  The ALJ's RFC finding is not supported by substantial evidence because she did not include any limitations pertaining to plaintiff's affective disorders.**

Plaintiff contends that the RFC determination is flawed because it did not take into account plaintiff's significant impairments of bipolar disorder and depression. The ALJ acknowledged that plaintiff was diagnosed with bipolar disorder and borderline personality disorder. PageID.148, 551.  However, the diagnosis of a condition says nothing about the severity of the condition.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  *See McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual").

Here, the ALJ found that "[t]he claimant's medically determinable mental impairments of bipolar disorder and borderline personality disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." PageID.148.  In reaching this determination, the ALJ performed an in-depth review of plaintiff's medical records.  PageID.148-150.  As discussed, although the ALJ did not find these impairments to be severe impairments, she could consider these non-severe conditions in determining the claimant's RFC.  *Maziarz*, 837 F.2d at 244. However, in this case, the ALJ found no significant limitation which would lead to a work restriction based on these diagnoses.  PageID.148-150.

When courts review an ALJ's decision under 42 U.S.C. § 405(g) to determine whether substantial evidence supports that decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th

Cir. 2007). Even if this Court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147. "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir.2012). Here, the ALJ's evaluation of plaintiff's bipolar disorder and borderline personality disorder is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.

### 3. The hypothetical question posed to the Vocational Expert (VE) failed to include all plaintiff's well-established impairments or symptoms.

Although listed in the statement of errors, plaintiff does not develop this argument, other than to state that the limitations set forth in the ALJ's hypothetical question are not supported by plaintiff's RFC. PageID.1135. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the hypothetical posed to the VE incorporated the ALJ's RFC determination. Accordingly, plaintiff claim of error is denied.

> **D.     The ALJ's finding that at Step 5 [sic] that Ms. Kaufmann could perform her past relevant work is not supported by the evidence because plaintiff needed accommodations from her employer, which are not found in the mental health aid position generally in the national economy.**

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work.  *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy.  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 723-24 (W.D. Mich. 2007), *citing Studaway v. Secretary of Health & Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987).  *See* SSR 82-61, 1982 WL 31387 at *2 (1982) (the determination at step four can be supported by the finding that the claimant can perform her past relevant work as "actually performed," or, "as generally required by employers throughout the national economy").  The Act requires that a claimant show that his impairments are so severe that he is "unable to do his previous work."  *Studaway*, 815 F.2d at 1076, quoting  42 U.S.C. § 423(d)(2)(A).

Plaintiff contends that the ALJ failed to consider that her past relevant work as a mental health aide was in a sheltered environment and that an employer in a competitive work setting would not make these accommodations.  The Court disagrees.  Accommodated work is a factor to consider in determining whether one can do past relevant work.  *See* 20 C.F.R. § 404.1573(c) ("[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity").

> Work done under special conditions is addressed in 20 C.F.R. § 404.1573(c), which provides that even work done in a sheltered workshop may show a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level." If, however, a claimant's impairments prevent him from doing "ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work," it may be sufficient to show that the claimant is not working at the substantial gainful activity level. 20 C.F.R. § 404.1573(b).

*Boyes v. Secretary of Health & Human Services*, 46 F.3d 510, 512 (6th Cir. 1994).

In addressing plaintiff's claim, the ALJ considered the statement of her supervisor, Claudia Wink-Basing, the executive director of InterAct of Michigan. PageID.156. Plaintiff was employed as a peer specialist at InterAct. PageID.888. According to Ms. Wink-Basing, peer specialist positions have some flexibility "to accommodate the cycles of peoples' illnesses that sometimes get in the way of their being able to perform all the duties that everyone else might otherwise be asked to do." *Id.* Thus, Interact provided an accommodation to plaintiff by changing her work schedule on short notice and letting her work from home. PageID.889. When asked "[d]o you accommodate other professionals or clerical staff by letting them work from home in that same manner?" Ms. Wink-Basing answered, "No, that is really not an option." *Id.*

The accommodation issue was raised at the administrative hearing, when plaintiff's counsel asked the VE whether, based on Ms. Wink-Basing's statement, plaintiff's past employment was competitive or accommodated. PageID.201. The VE responded that plaintiff's employment was both competitive and accommodated, with the accommodation given to attendance and punctuality. PageID.201-202. The VE also testified that, considering Ms. Wink-Basing's statement, "peer support personnel have that accommodation" at InterAct. PageID.202-203.

In evaluating the evidence regarding plaintiff's RFC, the ALJ assigned little weight to Ms. Wink-Basing's opinion of plaintiff's abilities to perform work-related activities:

14

> I have read and considered the signed statement of Claudia Wink-Basing, MSW (Exhibit B29F). Ms. Wink-Basing is the executive director of lnteract of Michigan (Exhibit B29F/ 1). She supervised the claimant when the claimant was hired as a peer specialist at Interact of Michigan (Exhibit B29F/1 ). This opinion is given little weight, as it is a lay opinion based on casual observation rather than objective medical evidence and testing.

PageID.156.

However, the ALJ adopted the VE's opinions which were based upon Ms. Wink-Basing's statements regarding plaintiff's duties in her past relevant work as a peer specialist and the accommodations provided to her by InterAct. The ALJ addressed plaintiff's past relevant work as follows:

> Based on the claimant's documented vocational background and the claimant' s testimony, the vocational expert indicated the claimant worked within the last fifteen years as a mental health aide. A mental health aide is a light, semiskilled occupation with an SVP of 4. The claimant performed this occupation at the sedentary exertional level.
>
> \*   \*   \*
>
> The claimant's past relevant work of mental health aide was performed within fifteen years of the date of this decision. The claimant's former employer submitted a document showing that the claimant performed this occupation in 2010 and 2011 (Exhibit B3E/1).
>
> \*   \*   \*
>
> Having been asked to assume a person with the same age, education, and work experience as the claimant, and a residual functional capacity as stated in the finding immediately prior to this one, the vocational expert testified that such an individual would be able to perform this past relevant work as actually performed by the claimant.
>
> The testimony of the vocational expert is consistent with the Dictionary of Occupational Titles, and I accept it. In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, I have determined the claimant is able to perform this past relevant work as actually performed based on the testimony of the vocational expert.

PageID.156-157.

The VE considered the issue of accommodation at the administrative hearing and concluded that plaintiff could perform her past relevant work as actually performed at InterAct. Based on this record, substantial evidence supports the ALJ's determination that plaintiff could perform her past relevant work. Accordingly, this claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 25, 2016            /s/ Ray Kent
                                  RAY KENT
                                  United States Magistrate Judge